# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLINTON STRANGE,** | : | |
| *Plaintiff-pro se* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 18-4032** |
| | : | |
| **COMCAST CORPORATION d/b/a** | : | |
| **XFINITY** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                      DECEMBER 14, 2018

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a *motion to compel arbitration and stay litigation* filed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, by Defendant Comcast Corporation, doing business as Xfinity ("Defendant").[1] [ECF 7]. Plaintiff Clinton Strange ("Plaintiff"), proceeding *pro se*, has opposed the motion. [ECF 8]. The issues raised in the motion have been fully briefed and are ripe for disposition.[2] For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND

On August 29, 2018, Plaintiff filed an action against Defendant alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*; the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2; and the Louisiana Civil Code. [ECF 1]. Specifically, Plaintiff alleges that Defendant violated the TCPA by sending him fourteen unwanted text messages and the Sherman Act by causing him to endure frequent outages of his internet service, and committed the tort of conversion of chattel (*i.e.*, his cellphone) under Louisiana law. In its motion, Defendant moves to

---

[1]     Defendant asserts that "Comcast Corporation" is a holding company, erroneously named, and that its correct name is Comcast Cable Communications, LLC.

[2]     In adjudicating the underlying motion, this Court also considered Defendant's reply. [ECF 11].

compel arbitration of these claims consistent with the arbitration provisions which are part of a subscriber agreement. [ECF 7]. Defendant's motion is based on the following summary of facts pertinent to the motion:[3]

> Plaintiff is an individual residing in Louisiana who subscribed to Comcast broadband internet service in July 2016. As a matter of routine and regular business practice, when an individual subscribes to and opens a Comcast account, the subscriber receives from Comcast a Comcast Welcome Kit which includes, *inter alia,* the Comcast Agreement for Residential Services. (ECF 7-2 at 2).[4]
>
> The operative Comcast Agreement for Residential Services for 2016 (the "2016 Subscriber Agreement") provided the following on the first page in bold type: "**You will have accepted this Agreement and be bound by its terms if you use the Service(s) or otherwise indicate your affirmative acceptance of such terms**." (*Id.* at 6).[5] This agreement further indicated on the first page in bold, underlined, and all capital letters, that: "**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICE(S)**." (*Id.*).
>
> Specifically, Section 13, titled "BINDING ARBITRATION" provided, *inter alia*, that: "Any Dispute involving you and Comcast shall be resolved through individual arbitration." (*Id.* at 20). The 2016 Subscriber Agreement further defined "Dispute" as "[A]ny claim or controversy related to Comcast, including but not limited to any and all . . . claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise." (*Id.* at 20).
>
> The arbitration provision contained additional stipulations, such as: (1) a forum in an area where the subscriber received service, (2) the right of the subscriber to sue in small claims court, (3) a requirement that Defendant pay the arbitration fees and costs for

---

[3] For reasons provided later, this Court construes the facts and evidence in the light most favorable to the non-movant, here, Plaintiff.

[4] These facts were provided in an affidavit of Defendant's Director of Regulatory Compliance. (ECF 7-2 at 2-4).

[5] Attached to the Director of Regulatory Compliance's affidavit and marked as Exhibit 1 is a copy of the 2016 Subscriber Agreement. (*Id.* at 5-35).

2

claims of less than $75,000, and (4) the ability for subscribers who win in arbitration to recover attorneys' fees if they would have been able to do so in court. (*Id.* at 21-22). Finally, the arbitration provision included an opt-out clause, advising subscribers as follows: "IF YOU DO NOT WISH TO ARBITRATE DISPUTES, YOU MAY DECLINE TO HAVE YOUR DISPUTES WITH COMCAST ARBITRATED BY NOTIFYING COMCAST IN WRITING, WITHIN 30 DAYS . . . ." (*Id.* at 21). The opt-out clause provided a website or mailing address by which subscribers could notify Defendant of their intention to opt out of arbitration, and further noted that a decision to opt out would not adversely affect the subscriber's relationship with Defendant. (*Id.*)

Plaintiff's August 23, 2017 Comcast bill included a new subscriber agreement (the "2017 Subscriber Agreement"), which indicated that it replaced any prior agreements, but otherwise was in all relevant respects identical to the 2016 Subscriber Agreement, particularly as it related to the arbitration provision. (*Id.* at 36-48).[6]

Plaintiff paid his August 23, 2017 bill on September 8, 2017, and continued using Defendant's services. (*Id.* at 3). At no time did Plaintiff notify Defendant of any intention to opt out of arbitration. (*Id.* at 4). Plaintiff contends that he "does not recall signing or reviewing a '2016 Subscriber agreement'" and "also does not recall receiving an 'insert' in his August 23, 2017 billing statement regarding the '2017 Subscriber Agreement.'" (ECF 8 at 4).

**DISCUSSION**

As noted, Defendant relies on the arbitration provisions in the Subscriber Agreements to move to compel arbitration and to stay the litigation. Plaintiff appears to make three arguments against the request to compel arbitration; *to wit*: (1) the parties did not enter into any arbitration agreement because Plaintiff does not recall receiving and/or signing either Subscriber Agreement; (2) the claims Plaintiff brings in this action do not fall within the scope of the arbitration provision;

---

[6] Attached to the Director Regulatory Compliance's affidavit as Exhibit 2 was Plaintiff's August 23, 2017 bill, which included the 2017 Subscriber Agreement. (*Id.* at 36-48).

and (3) the Subscriber Agreements are unenforceable adhesion contracts. Plaintiff's arguments are, however, without merit.[7]

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983). Section 2, the primary substantive provision of the FAA, provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as

---

[7] When considering a motion to compel arbitration in cases where the affirmative defense of arbitrability of claims is not apparent on the face of a complaint, or documents relied upon in the complaint, courts apply the standard applied to motions for summary judgment under Federal Rule of Civil Procedure ("Rule") 56. *Guidotti v. Legal Helpers Debt Resolution, LLC.*, 716 F.3d 764, 773-74 (3d Cir. 2013) (citations omitted). Here, the issue of arbitrability is not apparent on the face of the complaint because Plaintiff did not reference the arbitration provisions in his complaint nor did he attach a copy of the 2016 or 2017 Subscriber Agreement. Thus, this Court applies the Rule 56 summary judgment standard. Under Rule 56, summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A fact is "material" if its existence or non-existence may affect the outcome of litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In applying a Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F.3d at 772.

While ordinarily a party opposing a motion to compel arbitration should have an opportunity to conduct limited discovery to determine arbitrability, Plaintiff has not requested an opportunity to conduct such discovery and, further, most of his arguments against arbitration are purely legal. Additionally, Plaintiff's assertions that he "does not recall signing or reviewing a '2016 Subscriber agreement,'" and that he "also does not recall receiving an 'insert' in his August 23, 2017 billing statement regarding the '2017 Subscriber Agreement,'" are insufficient to create a genuine issue of material fact when considered against the sworn affidavit provided by Defendant's Director of Regulatory Compliance indicating that Plaintiff would have received the 2016 Subscriber Agreement with his Comcast Welcome Kit as part of Defendant's "routine and regular business practice," and that Defendant's "records also reflect that Plaintiff received [the 2017 Subscriber Agreement] with his August 2017 billing statement." Indeed, Exhibit 2 to the Director of Regulatory Compliance's affidavit is Plaintiff's August 2017 billing statement, complete with the 2017 Subscriber Agreement. Accordingly, this Court will apply the Rule 56 standard to determine whether to compel arbitration but will forego discovery as to the arbitrability issue because the necessary information is already part of the record. *See Glenwright v. Carbondale Nursing Home, Inc.*, 2017 WL 1092541, at *3 (M.D. Pa. Mar. 23, 2017) (applying Rule 56 standard but bypassing discovery because the information needed was already of record for the court); *see also Smith v. RGIS, LLC*, 2017 U.S. Dist. LEXIS 166608, at *13-14 (W.D. Pa. Oct. 6, 2017) (same).

4

exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 (citing 9 U.S.C. § 2). Section 2 further "reflects the fundamental principle that arbitration is a matter of contract," and "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). Under the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The FAA further provides that "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* In so doing, the court "must resolve 'any doubts concerning the scope of arbitrable issues in favor of arbitration.'" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25) (internal alterations omitted). If the court determines that the case must be arbitrated, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Before compelling arbitration, a court must determine (1) whether a valid agreement to arbitrate exists under the contract and, if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d

5

529, 532 (3d Cir. 2005). Throughout the inquiry, there is a presumption in favor of arbitrability. *Id.* In determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract formation. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Casarotto*, 517 U.S. at 687; *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999). Finally, consistent with Section 2 of the FAA, courts must "rigorously enforce" arbitration agreements according to their terms, *Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213, 221 (1985), including terms that "specify with whom [the parties] choose to arbitrate their disputes." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U. S. 662, 683 (2010).

*Formation of the Arbitration Agreement*

To determine whether the parties agreed to arbitrate, this Court looks to Louisiana law, the state where Plaintiff received his internet service. *See Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007) (noting that the threshold question of the existence of an arbitration agreement is determined based on the law of the state where the internet services were provided). As mentioned, Plaintiff contends that no valid arbitration agreement exists because he does not recall receiving and/or signing either Subscriber Agreement. However, Louisiana law does not require arbitration agreements to be signed. *Hurley v. Fox*, 520 So. 2d 467, 467 (La. Ct. App. 1988) (holding that Louisiana law "does not require that the written agreement to arbitrate be signed by the parties."). Further, "[u]nder Louisiana law, evidence indicating that an item has been properly mailed creates a presumption that the addressee received the item." *Truitt v. DirecTV, Inc.*, 2008 WL 5054570, at *3 (E.D. La. Nov. 21, 2008) (internal citation omitted). In addition, a

6

cable service subscriber's denials that he received copies of an agreement mailed to him "do not overcome the presumption that he received copies of the Customer Agreement." *Id.* Finally, silence or inaction (*i.e.*, continued use of the service) demonstrates that the subscriber has consented to the agreement. *Id.* Despite Plaintiff's lack of recollection, this Court concludes, based on Louisiana law and Defendant's uncontested affidavit attesting to Comcast's business practice, that Plaintiff received a copy of the Subscriber Agreement with his August 2017 billing statement and, therefore, agreed to its arbitration provisions when he continued his use of the Comcast internet service. Thus, consistent with the 2017 Subscriber Agreement, the parties agreed to arbitrate any disputes related to all services.

*Scope of Arbitration Provisions*

Next, Plaintiff argues that his complaint does not fall within the scope of the arbitration provisions. This Court disagrees. As noted, the term "dispute" in the arbitration provisions of the Subscriber Agreements was defined as "any claim or controversy related to Comcast, including but not limited to any and all . . . claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise." As pled in the complaint, Plaintiff contends that Defendant's alleged misconduct consisted, *inter alia*, of sending him text messages related to billing for his internet service, and causing outages in his service. These claims for relief and theories of liability, which relate to Plaintiff's internet service with Comcast, clearly fall within the scope of the relevant arbitration provisions of the Subscriber Agreements. *See Chassen v. Fid. Nat'l Fin. Inc.*, 836 F.3d 291, 295 (3d Cir. 2016) (noting that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability.'") (quoting *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24-

7

25). Thus, this Court finds that the allegations presented in the complaint fall within the purview of the arbitration provisions of the Subscriber Agreements.

*Adhesion Contract Analysis*

Lastly, Plaintiff argues that the Subscriber Agreements are unenforceable adhesion contracts. This Court disagrees. Adhesion contracts are standard contracts, usually in boilerplate form, generated by a party of superior bargaining power for adherence or rejection by the weaker party. *Golz v. Children's Bureau of New Orleans, Inc.*, 326 So.2d 865, 869 (La. 1976). The Louisiana Supreme Court has held that "a contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error, which vitiates consent." *Aguillard v. Auction Management Corp.*, 908 So.2d 1, 12 (La. 2005). When adhesion contracts contain provisions written in unusually small print, a question may be raised as to whether the weaker party in fact consented to those terms. *Sutton's Steel & Supply. Inc. v. Bellsouth Mobility. Inc.*, 776 So.2d 589, 596-598 (La. Ct. App. 2000). "The mere fact that a contract contains an arbitration provision does not render it adhesionary." *Id.* at 596. When courts address "the enforceability of arbitration agreements under a contract of adhesion analysis, . . . a presumption of arbitrability does exist." *Aguillard*, 908 So.2d at 18.

Here, none of the arbitration clauses were written in fine print. To the contrary, notice regarding arbitration was generally presented in bold letters, underlined, clearly written, and/or in capital letters, and difficult to miss. *See Ndanyi v. Rent-A-Center, Inc.*, 2004 WL 3254516, at *3 (E.D. La. Dec. 11, 2014) (stating that, unless the agreement's provisions are in fine print or lack clarity, "the plaintiff cannot overcome the presumptive duty to read"). In addition, Plaintiff could have refused Comcast's service and foregone arbitration, or he could have opted out on two

separate occasions as provided for in the Subscriber Agreements. He did neither. Finally, many of the clauses of the arbitration provisions—such as the forum selection, attorneys' fees, and small-claims-court provisions—inured to Plaintiff's benefit. Thus, this Court finds that pursuant to Louisiana law, the Subscriber Agreements were not unenforceable adhesion contracts.

**CONCLUSION**

For the reasons set forth, Defendants' *motion to compel arbitration and stay litigation* is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.